Let me just say, versus Kaiser Foundation Health Plan, and this case is set for 30 minutes for appellants, 15 minutes for Kaiser, and 15 for regents. But the next case on the calendar was the Sternhoff case versus Regents Blue Shield, and we consolidated them for argument. So, I'm sorry, yeah, my day sheet didn't indicate that. But I think that's what our total argument is for both cases, and I understand that the appellant's lawyer will go first for 30 minutes, for 20 minutes, and then each of the appellees will argue for 15 minutes each, and then you'll have 10 minutes rebuttal. Thank you, Your Honor. Is that right? Yes, that's my understanding. We just changed this yesterday, so I'm getting up to speed. But I think that makes sense, so please proceed. Thank you, Your Honor. May it please the Court, my name is Eleanor Hamburger, and I am counsel for the appellants, two of whom are in the courtroom, Elizabeth Mohandro and Jody Sternhoff. The appellants in this case all have disabling hearing loss, and when preexisting conditions were legal, the treatment that they needed for their hearing loss could be excluded from coverage as preexisting. Sure, they could buy health insurance, but it would not cover their disabling condition. The key reason that they needed health coverage. The Affordable Care Act was supposed to change all of that. It was particularly focused on ending preexisting condition exclusions and other barriers to comprehensive health coverage for Americans, including Americans with disabilities and people with serious health conditions. But after the Affordable Care Act took effect, Kaiser Health Plan and Regence, the two defendants here, failed to remove the few disability-based exclusions that remained in their health insurance plans. The hearing loss exclusion at issue here functions like the now outlawed preexisting condition exclusions. Appellants still cannot get coverage for the treatment of their disabling hearing loss. Ms. Hamburger, let me stop you because, if you don't mind, I have a basic, I guess, problem understanding what your theory of discrimination is. It seems to me your allegation is that anyone with a hearing loss is disabled. Is that your position? You know, we cannot tell if Kaiser and Regence have applied this exclusion to non-disabled people because we didn't get to discovery, but it is plausible that everybody they've applied it to has been disabled under the broad definition of Section 504 after the ADAAA. But you haven't alleged it's plausible. You've alleged in your complaint, and I'll quote from paragraph 21 in Kaiser and 22 in Blue Shield, quote, plaintiffs and other members of the class have been diagnosed with hearing loss, comma, a physical impairment that limits a major life activity. That, to me, is saying anyone with any sort of hearing loss, regardless of how mild, is disabled for purposes of the ACA and is being discriminated against. Is that what you're saying? So, Your Honor, that is what we alleged. If this court concludes, well, maybe on the face of the plans, without any discovery, maybe it applies to non-disabled people, we should have the ability to amend the complaint to address that issue. We never got that opportunity in the trial court. Because whether it applies to only disabled people or a handful, or even more than a handful, under Section 504, discrimination can still be alleged. And so I want to... Can I ask you a follow-up clarifying question? The complaint, the amended complaint, and I'm looking at ER 277, proposed a class of all individuals who have required, require, or will require treatment for hearing loss other than treatment associated with the cochlear implant. So I take it by your answer to Judge Presnell's question that you're not asking for a class of non-disabling hearing loss individuals. Implicit in this proposed class definition are only individuals who suffer a hearing loss that rises to the level of disability, right? That is correct, Your Honor. If that's the case, is there a fit problem for a proxy discrimination claim? Your Honor, I don't believe so. Because just as in Rohde v. Bonte, the fit between the hearing loss exclusion, which is only going to apply solely to people with disabling hearing loss, because if you don't need, if you don't have the medical necessity under the contract for hearing treatment, that's not going to be the sole reason you're denied. So if you need medical... If you meet the medical necessity definition and you're denied under this exclusion, then the fit of denying based on hearing loss and disabling hearing loss is so close, if not the same. Well, the reason I ask that is because part of the argument that you're asserting on appeal is that hearing loss is a proxy for hearing disability. And so I don't know because there aren't allegations that I could find as to whether there's an over-breath problem here because I don't know what subset of individuals who suffer some degree of hearing loss are actually disabling hearing loss. So you're right, Your Honor, but that is also something that if we had discovery and we found after discovery that we needed to narrow or modify the class definition, we could do. That's done as a matter of course. But here we don't know who Kaiser and regents have denied under this exclusion because we haven't gotten any discovery. But at the motion to dismiss stage, the fact that the exclusion might plausibly be applied to non-disabled people who need hearing loss is not a reason to dismiss the case. In Rody v. Bonte, that case involved a county that sought to close a rehab hospital that served predominantly, but not exclusively, people with disabilities. And the court said that eliminating necessary medical services for a group that is predominantly disabled while continuing to provide the medical care required and sought by non-disabled Medi-Cal recipients is a 504 violation. And that's because the cutback in Rody, just like the exclusion here, targets and disproportionately burdens the disabled. And because of that, it's not the sort of facially neutral reduction considered in Choate. And I want to just kind of step back and talk about the hearing loss exclusion here. As we alleged, the hearing loss exclusion takes outpatient services, durable medical equipment, prosthetics and surgery, things that are all covered as EHBs, they're all covered under the plans when medically necessary for every other condition, and it bundles them together and calls them something new. It calls them hearing treatment in order to exclude it. And what's telling is the one piece of evidence that we got, because we didn't get discovery, was submitted by Kaiser. They submitted their coverage policy for bone-anchored hearing aids, and that's at ER 234. And they said when we cover those things, cochlear implants and bone-anchored hearing aids, we cover them under the regular medical benefit. So there's nothing special about this treatment, at least on the face of it, that sets it apart from outpatient office visits, durable medical equipment, prostheses and surgery. The only thing special about it is the organ of the body it operates on. But the services themselves are otherwise covered, but for the exclusion. For this reason, the trial courts got it wrong when they said, well, a policy that is offered to people equally, regardless of the benefit design, is a form of facial discrimination. The second thing that the trial courts got wrong was they claimed that there was no denial of meaningful access to benefits, because hearing loss treatment is something special that's not covered by the plans. And the third thing that they got wrong was fundamental alteration. Now, on a motion to dismiss, you cannot decide fundamental alteration as a matter of law. I want to address each of those three things and your questions, but I want to start with a little bit about the Affordable Care Act. It represented a massive change in the insurance market, and in fact it required all of these health plans to rewrite their policies. It was Congress's intent to make this dramatic change in coverage. And it was particularly focused on anti-discrimination. It ended discrimination in how insureds with disabilities get in the door to coverage. So it eliminated preexisting condition exclusion clauses. It said insurers can't charge more to people based upon their health conditions, and they can't drop them based upon their health conditions. But once in the door, Congress made sure that insureds got comprehensive coverage in a non-discriminatory fashion. And they said there's got to be these 10 broad categories of coverage. So they mandated certain categories of coverage, but providing those categories of coverage was not enough. You can't just check the boxes. You have to make sure that the coverage is designed in a way that is non-discriminatory. And that EHBs, essential health benefits, cannot be denied on the basis of present or predicted disability. And then Congress went in and they specifically eliminated some of the most pernicious forms of discrimination on the basis of disability. They ended lifetime and annual caps on coverage, which is the very thing that had been disputed in Choate. And they extended mental health parity to all ACA-regulated plans. And then the third thing that they did was Section 1557. And there's some confusion in the briefing about where the parties disagree, and I just want to kind of hone in on that for a minute. There is no dispute. Appellants agree that Section 54's grounds and enforcement mechanisms apply to Section 1557. There's also no dispute that appellants are persons with disabilities covered under Section 504, and that the two insurers have to comply with it. The only dispute here is how this Court should interpret the plan, and whether it discriminates on the basis of disability under 504, but in a brand-new context. There's a lot of argument about the Americans with Disabilities Act, but Section 504, until the Affordable Care Act, did not apply to private insurance. In fact, it excluded private insurance from its reach. The ADA, therefore, has never applied. This Court found that the ADA doesn't apply to private insurance in Weyer v. 20th Century. And it makes sense that the Congress would not incorporate the ADA, because the ADA's insurance safe harbor allows the very medical underwriting that the Affordable Care Act prohibited. And no court has allowed the standards applied in the ADA to 1557. While the trial court in the Kaiser case referenced the case Crowell, they did not apply the standards of the ADA to 1557. Nor has any regulator. So, turning to the argument about the exclusion. Exclusion is a form of facial or proxy discrimination. And it's facial because it calls out the trait that is the source of the disability in its very language. And even Choate said, if you call out the protected trait that disproportionately impacts people with disabilities, that itself may be the grounds for a 504 violation. Second, meaningful access is denied. Rather, the Court finds it's facial discrimination, proxy discrimination, or disparate impact discrimination. It has to reach this question, were meaningful access to benefits denied? And Choate gives us very clear guidance. It says meaningful access to benefits means access to the benefits offered by the entity. But even Choate says the entity is not free to categorize the benefits as based upon a disability in order to avoid coverage. It says, quote, the benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they're entitled. Under Choate, benefits that are defined based upon a trait that the handicapped are more likely to have could be a Section 504 violation. And that's exactly what we have here. And the insurers have bundled together otherwise covered outpatient office visits, durable medical equipment, and surgery and called it a hearing loss treatment in order to exclude it. But it appears to us plausible, as the materials that Kaiser submitted, that when they cover the service, it is covered under the generic benefits of outpatient office visits, ambulatory surgery visits, and so on. Are you arguing for disparate impact theory, which hasn't so far been pled? Your Honor, as we understood it from Crowder, that it almost, it didn't matter whether we pled facial discrimination or disparate impact, because it does not apply with the same clear lines in disability discrimination as it does in the other kinds of discrimination. But if this Court determines that we did not plead it, and we think we did, we pled disability discrimination. But if you think we didn't, we should have the opportunity to amend the pleadings accordingly. This bundling together is actually something that we have challenged successfully under the Mental Health Parity Act. In ZD versus Group Health, the predecessor to Kaiser, they had bundled together speech and occupational and physical therapy services into a new category of benefits, neurodevelopmental therapies, when they were provided to treat developmental disabilities. And they excluded that. At the same time, they covered speech and occupational and physical therapies for other conditions. That was found invalid under the Washington Mental Health Parity Act, but it would be invalid under Section 1557 here today. And then finally, under fundamental alteration that simply cannot be found on a motion to dismiss. It's a fact-based, fact-intensive inquiry, but it's clear that the judges were concerned about cost. And let me just say this, although we can't tell without discovery, what we know in general is that insurance, first of all, under Section 504 case law, the real standard for determining whether an entity can withhold medical benefits, at least in the context of providers who are trying to avoid treating people with disabilities, that standard is that you have to have a bona fide medical reason. And that standard was picked up by the federal regulators when they said you have to have medical and scientific reasons for the exclusions. And it's consistent with how health insurers make decisions in the first place. They decide medical necessity, they decide whether things are experimental or investigational, they decide whether to cover things in general based upon medical and scientific information. And so even if they have this exclusion, it's still possible for them to apply it if they have a bona fide medical reason, but they haven't come forward, even in the motions to dismiss, with a bona fide medical reason for the exclusions. Instead, there's a lot of discussion about cost without any evidence. And insurers, if this court were to remove the exclusion, insurers still have many tools to manage coverage and cost. They can do utilization review, they can impose visit limits, they can limit provider networks, they can limit vendors, they can tier coverage, they can adjust premiums. And cost can't be considered in a vacuum. I have another case where cost is the reason for not covering developmental delay services, and at the same time the plan is saying that cost is the reason they can't cover it, they expanded coverage for speech, occupational and physical therapy to treat other conditions. So we have to look at cost with evidence about what the plan is doing overall. And finally, what we know publicly about this benefit is it's not that expensive to implement. The Washington Medicaid program implemented the same non-cochlear hearing treatment coverage, and it was estimated to cost just 33 cents per person per month. And when the Washington State Public Employee Benefit Plan, administered by regents, added the same coverage, it was estimated to cost just $50 per audiology visit and $3,000 per hearing aid. And so the public information that's out there reveals it's not a big ticket item. It's not something that's going to destroy health coverage as we know it, as alleged by the insurers. So in conclusion, unless your honors have any more questions, Congress intended people with disabilities to be brought into the comprehensive coverage that everybody else gets under the ACA, and to receive that coverage in a non-discriminatory manner. Arbitrary disability-based exclusions are no longer permissible in plans that regulate the ACA. This case should be remanded to the district court and allowed to proceed. We'll hear from the appellees next, and who's first? Good morning, your honors. Medora Marceau on behalf of Kaiser Foundation Health Plan. I think it's important to understand what appellants are asking this court to do, which is something that the state of Washington and Congress refuse to do, which is to mandate coverage for a special type of hearing aid. And we found out from the amicus briefing that they even lobbied the Washington insurance commissioner to include it, and when the commissioner issued his regulations, he did not. And so I think it's important to understand comprehensive coverage under the ACA is not an amorphous term. It is a very specifically defined term, which is essential health benefits, which have been delegated to the states. The states then tell us what essential health benefits are. There's ten categories, and they specifically explain what they are. And in Washington, the kind of hearing aids that are subject to this lawsuit are not part of that comprehensive coverage. Now, it is absolutely true, and we agree that essential health benefits have to be provided on a nondiscriminatory basis. But we have, I believe this case drives the truck through what that scheme is trying to entail. So I understood counsel to say that they now concede that ACA 1557 does actually comport with the Rehabilitation Act Section 504 for disability discrimination, and that was what the Sixth Circuit clearly said, which almost every single district court has found. And so we're squarely within Section 504 to understand what is the discrimination. How do we evaluate that? And for a prima facie case, and by the way, that was the only claim that they pled, which was facial discrimination. Very clearly, it was facial discrimination. And it was facial discrimination not based on application, but based on the language of the exclusion itself, nothing else. And so there is no need for discovery. This Court needs to simply look at the exclusion and decide if it's discriminatory under Section 504. The prima facie case elements of 504 include otherwise qualified individual with a disability, was subjected to discrimination in a program that accepts federal funds, and such discrimination was solely by reason of a disability. That's important. Section 504 is different than ACA and others in terms of the causation element. It has to be solely. And as Judge Presnell pointed out, and I think counsel conceded in her argument, that the concept of hearing loss is not necessarily means someone has a disability. Well, that fails right away. By the way, this is not a quote-unquote hearing loss exclusion. That is what plaintiffs have characterized it as. This exclusion covers hearing aids, certain types of hearing aids, cochlear implants for those that have very profound hearing loss. It covers bone-anchored hearing aids. Let me ask you a question, please. If the class as defined and the complaint is overbroad and it doesn't just cover people with such serious hearing loss that it would interfere with major life activities, but also would cover some lesser hearing loss, is that a basis to dismiss the complaint? Yes, Your Honor, and here's why. Under Section 504, the essence of discrimination is, is the exclusion a disability-based exclusion? We're talking about facial discrimination, and I'll in a minute get to facially neutral. But for a facially discriminatory claim, they have to show that it's a disability-based exclusion. And they can't do that. Why? Because it's much broader than disability. And I think counsel concedes that hearing loss itself is not a disability. Even people that need treatment for hearing loss is not necessarily a disability. There's many people that have mild hearing loss that can benefit from amplification-type hearing aids. Are they disabled? Do they have a substantial limitation in hearing? And so it fails for that reason alone. But I think the other issue is that the fact that the so-called exclusion also gives coverage to people that have significant hearing loss who perhaps would be disabled. And so we have a two-part reason why this is not a disability-based distinction. One, the class of people that it excludes is much broader than the disabled, and two, it covers the very specific class of people that they say are being discriminated against for certain types of hearing aids. So we have a two-part situation there. And it would be like saying, if you don't get a vision benefit, then that means that everyone who needs vision treatment is disabled. They're not saying that for hearing loss, and it isn't common sense. And so the class definition, I think, is a little bit of a red herring, because they have to prove the element of what does discrimination mean. It has to be a disability-based distinction. And because they can't do that from the face of the complaint, that's why we say they should not. Counsel? Yes. And should they be entitled to amend their complaint to limit their claims to people with such a serious level of hearing loss that it interferes with life activities? It would be futile, Your Honor, because how could they ever prove that it was a disability-based distinction? They have to show that the exclusion that they're trying to say is invalid has to be based on a disability-based distinction. It doesn't matter who's in the class. They're saying that is the facially discriminatory item. And because they've conceded that it's broader, the exclusion itself is broader than just covering hearing disabled, and it also, at the same time, because there's a benefit there, covers hearing disabled for some types of hearing aids, amendment of the complaint will do nothing. It will not help them on their facial discrimination claim. And what about amendment of the complaint to allege a disparate impact theory? Thank you. That was my next topic. There's two types of facially neutral theories. The first is a pure disparate impact theory, and that is where there's a disproportionate impact on the disabled such that the benefit has to be changed so that you have to address the special needs of those individuals. That's a, I'll call it the pure disparate impact. That is directly what the Sixth Circuit said was not recognized in the law. It is also what the Alexander v. Choate, Choate v. Alexandria Supreme Court case said was a bridge too far in terms of applying disparate impact to Section 504. We also have Section 504 itself saying it has to be solely due to disability. And so it almost begs the question of, well, can you have a facially neutral claim under 504? The answer was yes, but in a limited way. And so I would say, first of all, there should not be a, this Court should say follow the Sixth Circuit and say that there isn't a disparate impact type of discrimination. But we've got Crowder in our circuit, so we don't have to follow the Sixth Circuit. The Sixth Circuit also has its Crowder equivalent. The Sixth Circuit also, unlike counsel's assertion, the Sixth Circuit absolutely provides the meaningful access under 504 and recognizes that, and it does so, it's right in the opinion, in fact, of the Kaltenberger case cited in Doe and the Ability Center v. City of Sandusky. So there's a separate type of disparate impact claim, and this is the meaningful access claim. So there's two types of claims, and they get mixed and matched, and I think it's really important to keep them separate because the meaningful access claim, which Crowder, the Ninth Circuit, and the Sixth Circuit both recognize, is really you've been denied meaningful access to a benefit that everyone else gets. And the example in Crowder was the quarantine of seeing eye dogs. That was a generally applicable policy applied to all dogs, but the blind who needed their seeing eye dogs to go to the services that the government offered, parks, libraries, et cetera, did not have meaningful access to those services. The Sixth Circuit completely agrees with that. The remedy for that is a reasonable accommodation, and in the Sixth Circuit's decision, it says, it specifically calls this out, and it says the plaintiff in that case did not plead reasonable accommodation, and therefore the court did not consider it. It did not say that they disagreed with meaningful access. So now we get into meaningful access, and I think this is another futile amendment if it would be allowed because, again, you have to look at what is the benefit they are being denied. We know that the benefit that they have to be legally offered is what the comprehensive coverage essential health benefits are. Have they been denied that? No. They want to change the benefit. That's a very different, they want to go back to the pure disparate impact. They want to change the benefit. They don't want meaningful access to a benefit that everyone else has. No one else gets this benefit, whether they're disabled or not disabled. And so I think that's a very fundamental distinction that has to be made. There was some argument in the amicus about the access-content dichotomy, and there may be the argument that nobody is being denied access to the plans, which I think everyone agrees, but the content has to be changed because it disproportionately affects certain classes of disabled. And if we run this, that's a pure disparate impact argument. That is not a meaningful access argument. I mean, you kind of dress it up as a meaningful access argument, but what are you getting access to? You want to change, you want something different than what everybody has. And if we look at how this would impact the current regime or the current state of insurance, under disparate impact analysis, why would a health care plan be allowed to apply medical necessity criteria? Because certainly that would impact people that might be more seriously sick. Why would they be allowed to apply experimental investigational exclusions? That also could apply to people who would be more disabled, more sick than everyone else. So all those facially neutral things that were supposedly the cost mechanisms that could help pay for these things, those would all fall away if this court were to find a disparate impact claim contrary to what the Sixth Circuit said. I think for the facial discrimination that we have here, which is the only one pled, I think the key is that because there is not a disability-based distinction, the exclusion itself, there cannot be discrimination. It is not solely due to disability. Therefore, that claim should fail. And on the issues of meaningful access, which is a facially neutral claim, which has not disparate impact claim, which has not been alleged, that claim should fail because they don't want access to something everyone else has. They want the other kind of disparate impact, the pure disparate impact. And that, I would submit, this Court should not go down that road, should follow the Sixth Circuit, should follow the Supreme Court. We ask that the case be affirmed. Good morning, and may it please the Court. My name is Maren Norton, and I am counsel for Regents Blue Shield and Cambia Health Solutions in this matter. An insurance policy that excludes coverage for all forms of hearing care does not discriminate on the basis of disability under Section 504 of the Rehabilitation Act, and by extension under Section 1557 of the Affordable Care Act. We've heard some discussion here today, but plaintiff's arguments to the contrary are not supported by any cases, statutes, or regulations. Section 504, as counsel for Kaiser mentioned, precludes discrimination solely by reason of disability. Solely by reason of disability. Thus, it's essentially a question of causation. Is the denial of the benefit or discrimination solely by reason of disability? And a facially neutral policy, as we have here, a facially neutral exclusion, applies equally to all policyholders, all individuals, disabled or not, is not discriminatory under the Rehab Act. And in order to find that it somehow might be discriminatory, the Court would have to find that every person who seeks hearing care, including routine examinations, is disabled. And that's simply, as the questioning earlier hinted at, not the case. Hearing loss is a medical condition that can, in some circumstances, result in a disability. But it's certainly on a spectrum of impairment. Now, plaintiffs may have mentioned this morning and have in their briefing just sort of the same class of services are otherwise available to other individuals, routine examinations, surgeries, et cetera. And it's indeed true that there are other types of routine examinations, other types of surgeries, and other types of durable medical goods available under this policy for other types of conditions. But not all other conditions, not all durable medical equipment, not all surgeries, and not excluded here on the basis of any sort of disability. There's other things that are excluded from the plan as well. And the exclusion here, as I said, relates to all, which is exactly what the district court held. And the district court rightly held that the plaintiff's claims were denied because the benefits they sought were simply not covered by their plan, not because of their disability. A plan participant with hearing loss that's not disabled would still be denied coverage for that same hearing loss-related service or treatment. Now, passage of the Affordable Care Act, we've heard a lot about, and I'm going to try to skip around here and avoid what you've maybe already heard in other contexts a bit, but passage of the Affordable Care Act, no one denies. It marked a landmark shift in health care in the United States. We've heard about essential health benefits. We've heard about it removed the prohibition on preexisting conditions, which that, you know, no one debates. That was a big deal. And it did change health care law. And it actually did apply for the, it sort of expanded the scope of entities to whom this, these anti-discrimination laws would apply. So, yes, for the first time, any program or activity, any part of which received federal financial assistance was subject to the discrimination, anti-discrimination provisions. So in providing the essential health benefits, providing these policies, one cannot engage in discriminatory behavior. We certainly don't dispute that. What we do, what the ACA did not do is create sort of a whole new universe of discrimination law. It didn't do anything of the sort. And as we've seen in Doe and our supplemental briefing on the Doe and we've heard references here today as well, the ACA merely incorporated the four statutes and the standards that were under those statutes. And plaintiff citation to cases like Rumble, the unpublished district court opinion out of the District of Minnesota are unprevailing. And that is notably the only case to so hold as it did, and Doe and others have said otherwise, including Briscoe that actually directly took on Rumble and said that that was not the case. Now, getting to your earlier question, Your Honor, about disparate impact and potentially moving to amend to plead that, first of all, it is a given, I think, that it was not pled here. And I think Counsel for Kaiser rightly said it would be futile to plead it again. Even if they had, though, and even if they were to amend, the question would become the sort of meaningful access to a benefit that the grantee offers. And simply this is, there is no benefit here that's being offered any different to anyone else. The access is universally the same. The access to this policy and the services and the provision of services under this policy is exactly the same for everyone. This is not a Crowder case. And when I think of Crowder, I sort of like to think of Crowder was the public benefits over here, everybody has access to it, and then we've got a policy over here that says those of you who need carnivorous animals, which was the exclusion in that case, you can't access these benefits. So those with a disability who need a guide dog can't access it. Here we don't have a benefit and a separate policy. Here the benefit is the policy. And the benefit is provided the same for everyone. It's a distinguishable and an important distinction, and Doe and others have likewise said it. And it's interesting because even Crowder, when it's too far, is to sort of acknowledge that the question is meaningful access, as we've heard some discussion of today. So again, I think it would, I would share the feelings of counsel that it would change, it wouldn't change anything to allow to amend either narrow the class, that's not the question, or to allege disparate impact in any fashion. There's certainly no issue of fact here to warrant remand on whether someone had meaningful access. One need only look at the face of the policy to see that the policy applies across the board to everyone who is a policyholder and everyone who has that and to find otherwise requires to get to where I think counsel's conceded we aren't, which is that hearing loss is a per se disability, and it's certainly not as much. I won't, in the interest of not repeating what everyone else has said, I just wanted to hit briefly, though, on this question of sort of facial or proxy discrimination and sort of the cases... For my own education, it isn't clear to me how many hearing disabled individuals would benefit from the use of the cochlear implant. There's some suggestion that only the most severely hearing disabled individuals would require that, which means that there may be a myriad of other sort of treatments available to hearing disabled individuals that aren't covered under these plans. There's certainly, I wouldn't disagree that there could be treatments for those with disabling hearing loss that would not be covered. I think the question, though, and then I'll come back to your question, if there's nothing in the record that would give a precise number of how many people, I'm sure one could Google, right, how many people use cochlear implants, but I think the key question here is not that, but the key question is on the face of this policy, are individuals with disabling hearing loss treated any differently or provided any less access to the benefits of cochlear implants? And if so, how would that benefit than those with other forms of hearing loss, whether it be minor hearing loss, some hearing loss, no hearing loss at all? And the answer to that is no. But Section 1557 also specifically prohibits discriminatory benefit design plans, and so there could be a disparate impact theory that arises from that specific prohibition under the ACA. And that's why I'm trying to get my arms around this issue and get my arms around what is evident in this record and what potential allegations could be added, because Kaiser's and your argument is really futility, and I'm not sure that that's so clear from this record. Well, I think it's futility, but I also think you can reach it, you can affirm on the record before you, because the question is, we don't deny benefit design and benefits that fall under the ACA are absolutely subject to the anti-discrimination provision, and in fact, there's no denying that, and we're not suggesting that we somehow can have a discriminatory plan. That's certainly not Regent's argument, and I don't believe that to be Kaiser's argument either. The question is simply on the face of this exclusion, is it that? And that's when we turn to, is hearing loss a disability? That's what the exclusion, it's a hearing care exclusion, and is hearing loss a disability? And if the answer to that is no, then indeed, they're on the face of this exclusion, on the face of this complaint, then the question is, is it that? And if you want to get to disparate impact, and potentially, I don't believe there's anything that plaintiffs can add to plead facts or otherwise on disparate impact, because they could certainly make some allegations, but the question then becomes, is there meaningful access? And here, there is meaningful access, it's equal access. And certainly none of the case law, Choke, Crowder, and others, none of them say that, and in fact, Choke goes as far as to saying that someone with a disability has to have access to any potential treatment they might need for their condition, whatever that might be. Someone with a disability or otherwise, that everyone gets access to everything that they need, that's certainly not what meaningful access means. What meaningful access means is that everyone has the same access to the benefit being offered. So meaningful access to the benefit. Here the benefit, we have a policy with an exclusion. It's the same benefit being offered to everyone, no matter your disability condition or otherwise. Someone who has no hearing loss at all, the same benefit applies the same. Someone who will never have hearing loss, the same benefit applies the same. So that's the real question in the disparate impact context, is there's certainly no case law and there's no statute, and the ACA does not say that you have a right to all care, adequate care or anything of the like. It simply says that you have to provide these benefits in a non-discriminatory manner. And then if we want to get to disparate impact, you would look and you would say is there meaningful access. And I would argue on the face of this exclusion, you need not allow amendment to get there, because whether futility or not, I would say you can reach that question on the face of the complaint as pled, because you can look at it and you can say, this exclusion grants meaningful access, i.e., the exact same access to every policyholder under this plan. So there's no other, the exclusion won't change. If we amend the complaint. Just wanted to hit on proxy discrimination quickly. We sort of heard a lot about proxy discrimination or constructive facial discrimination, and I want to just point this court, there's some helpful language in Pacific Shores, which you cited in our brief, and there was also I believe only the second case recently in the Ninth Circuit to even use the words proxy discrimination was this summer in Davis v. Guam. And it said there that the fit between the classification at issue and the racial group, in that case it was a question about voting and racial discrimination, it covers is so close that the classification on the basis of race, in that case, can be inferred without more. And here we've heard a lot today about discovery and things like that and the need for discovery, and I would suggest that that's a tacit admission, if you will, that there, you can't infer the discrimination without more if you need discovery or you say you need discovery or want to articulate the need for discovery to make that claim. It's got to be clear from the face of it, and it's certainly, we would argue this is certainly not proxy discrimination. The hearing exclusion applies to far too many people to be proxy discrimination, as I've mentioned before. So, in conclusion, and unless the Court has any other questions, I would just say we certainly never heard, as we haven't again today, the plaintiffs articulate any sort of different standard of liability under 1557 that should apply to this case. It's a 504 case, it says facial or proxy discrimination, it is neither of those things as the District Court held, and we would ask this Court to affirm the discrimination. Thank you. MS. GOTTLIEB. Thank you, Your Honors. To pick up where Regence's counsel left off, Rody v. Bonte is a facial-slash-proxy discrimination case. The Court said there, and it's the Ninth Circuit case law, no one is addressed, the Ninth Circuit case law said there, where you target and disproportionately burden a class of people with disabilities, even if it captures some other non-disabled people in that cut or elimination of services, that is not the kind of facially neutral exclusion applied in Chote. And so the Ninth Circuit has already addressed this issue in a Section 504 case. It is a form of facial-slash-proxy discrimination, and whether, even if the Court says it is a form of disparate impact, it is definitely the kind of disparate impact that addresses meaningful access to benefits. Again, defendants don't address that Chote specifically identified how the entity is defining the benefit matters. And you heard Ms. Bonte say the benefit is the policy, and then a few minutes later she said the benefit is the hearing loss exclusion. And it really, you have to kind of get into the discovery to understand how Kaiser and Regence routinely define this benefit. What do they define it when they cover it? Because they cover it in many plans, just not in the plans that my clients have. And when they cover it, do they cover it as a special hearing loss treatment? Well, what we've seen so far, it looks like they don't. They cover it as essential health benefits. So meaningful, and if that's what they do, if when they cover it, they cover it under these generic terms, but they only use a disability-based exclusion when they're trying to eliminate it, that is very much disability discrimination under Section 5057. Counsel, may I please interject a question? Just to make sure I'm understanding your contentions. Let's assume that a policy excluded all speech defects. So it excluded treatment for minor speech defects and also for very major ones. What's the result under the Rehab Act and the ACA? So, Your Honor, we'd have to first look at whether speech defects largely or predominantly impact people who meet the definition of disability under Section 504. I understand that we had another speech case recently involving very major defects. Yeah. So, you know, if you don't mind, if I change your example just a little bit to something I'm a little more knowledgeable about. Developmental delays. I have a plan I'm litigating against right now that has an exclusion for developmental delays. Maybe they once had an exclusion for developmental disabilities, and because under the defendant's theory, that kind of exclusion where they call out the word developmental delay, change it to developmental delay. Well, then they say, oh, but developmental delay does not encompass every disabling condition. Well, I think you need to get into discovery to figure out are you applying it. First of all, who are you denying coverage to? If the claims are submitted by people who are disabled under 504, you know, regardless of the tweak in the language, in the plan, then that is discrimination under Rody v. Bonte. It says if you target and you disproportionately impact people with disabilities. So, in your example, Your Honor, if speech defects disproportionately refers to developmental delays, then that is discrimination. People with disabling speech defects. And the benefit that's being denied is something that when it's covered, is covered under the regular benefits of the plan, I think, yeah, that's a denial of meaningful access to benefits. Let me give you another question. And I guess part of it, in my mind, is I'm not sure what, you know, what the definition of the disproportionate impact, where that would come in. Let's take vision defects. The plan said we're not going to cover vision defects, so it wouldn't cover someone who is totally blind, but it wouldn't cover all the other people who just need to get glasses. What's the result under your theories? Yeah. So, Your Honor, I think if the services needed to treat the, that are being excluded, when they are not excluded under the plan, are covered under the generic benefits, that raises at least the prima facie case to get over the hump to discovery, to figure out if it is discriminatory. The problem for defendants is, well, and let me just say, the vision thing is hard, because partly, we don't know why the health plans are excluding the vision treatment in your case, or in this case, why they're excluding impairment. My expectation is when we get into the discovery, we will find that there is no justification, that it is historic, that it's done this way because it always has been. And that has been what we have found when we've challenged the developmental disability or developmental delay exclusions, that there really hasn't been a lot of thought into these archaic disability-based exclusions that remain in the plans. And it predominantly affects people with hearing loss, and it takes, what it does is, it eliminates their coverage to otherwise covered outpatient treatment, durable medical equipment, and so on. A prima facie case is made, but it gets to the next step. You find out, well, what's the reason? Maybe the health plan says, we've got a bona fide medical reason, we don't think for instance, vision treatment is medical. I don't know. But you get beyond that first step that we haven't been able to get beyond here, to find out, well, what's the rationale? And that was the point of the Affordable Care Act. It was designed to make sure that arbitrary disability-based exclusions are not continued, and that finally, we can bring people with vision people in, who had been excluded from coverage in the past. I want to address a couple of things that were also said by the defense counsel. Ms. Marisa said that, well, this is not a case, if you get rid of this exclusion, or you remand this case back to the trial court, the effect is going to be to open the door to mandate coverage for everything. And that's simply overblown. This theory, the Section 1557, only applies to disability-based exclusions, right? And so, in the Kaiser plan, I could only identify, I think, one other, an obesity exclusion. And all of the other non-disability-based exclusions, like for infertility or family counseling, it doesn't reach those. In addition, if these exclusions are removed, then they still have plenty of tools to manage cost. It doesn't mean that facially neutral, truly facially neutral exclusions, like medical necessity or experimental investigations, are going to be wiped away. You still have, based on 504, the right for insurance companies to manage and limit coverage based upon medical and scientific information. They also said, well, everybody is getting the same benefits. People with hearing loss, when they break a leg, they get their treatment just like everybody else. But that overlooks that everybody has different needs. But despite their different needs under the ACA, they are promised to get coverage under those essential health benefit criteria. They cannot bundle up a particular service into a new treatment just to exclude it, in order to deny them access to essential health benefits. Thank you. Counsel, I think your 10 minutes is up. And I appreciate your argument, and I appreciate the appellee's arguments. Unless the panel has questions, we will submit this case, these two cases, and we thank all counsel for their excellent arguments. Thank you very much.
judges: Gould, Nguyen, Presnell